UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cr-00123-MOC-DCK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **BRIANNA LESHAY WRIGHT,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant Wright's Motion to Sever under Federal Rule of Criminal Procedure 14 (#64) and the government's Response (#67). Having considered the Motion to Sever, the Memorandum in Support, and the Response, the Court enters the following findings, conclusions, and Order denying severance.

**FINDINGS AND CONCLUSIONS**

**I.  Background**

In an eight-count Indictment, the Grand Jury has alleged that between April 28 and May 8, 2016, defendants conspired to transport three minor victims across state lines from Charlotte, North Carolina to Myrtle Beach, South Carolina, for the purpose of engaging in prostitution. In particular, the government contends that the defendants devised a scheme to bring the minor victims to Myrtle Beach so that the minors could perform commercial sex acts to raise bail money for Co-defendant Zerrell Fuentes (who is Defendant Brianna Wright's spouse).

1

## II. Defendant Wright's Motion to Sever

Defendant Wright first contends that her trial should be severed from the trial of her codefendants because evidence presented against her husband will unfairly prejudice her and result in the jury's inability to make an individualized determination as to whether she is guilty or not guilty. She contends that "spillover evidence" would interfere with her right to a fair trial under the Sixth Amendment. She also contends that a joint trial would improperly pit her constitutional right to testify against the common law adverse spousal testimonial privilege.

### A. Applicable Standards

Motions to sever are governed by both Rules 8 and 14 of the Federal Rules of Criminal Procedure, and a two-step analysis is typically necessary. See 8 Moore's Federal Practice, ¶13.03[2] at 13–9 (Matthew Bender). While defendant has not challenged joinder by the Grand Jury, review of initial joinder under Rule 8 is important in understanding whether defendants should be severed under Rule 14.

#### 1. Rule 8 Joinder

The first step is to determine whether the defendants were initially joined by the Grand Jury in accordance with Rule 8. If they are deemed properly joined, the analysis proceeds to the second step, which requires a determination of whether such joinder, while satisfying Rule 8, is nevertheless unfairly prejudicial under Rule 14 when weighed against judicial efficiency. Rule 8(b) provides:

> Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed.R.Crim.P. 8(b). Thus, joinder of defendants is appropriate where the defendants are alleged to have participated in the same act or transaction constituting an offense or offenses against the United States. Id. In Cataneo v. United States, 167 F.2d 820, 822 (4th Cir. 1948), the Court of Appeals for the Fourth Circuit explained the term "transaction":

> This is not a technical term, nor is it a word of art. It has been variously defined and applied in numerous cases arising under the old Federal Equity Rules and in Code Pleading in connection with the joinder of causes of action and the permissibility of interposing counterclaims. Oft-quoted is the remark (under Equity Rule 30) of Mr. Justice Sutherland, in Moore v. New York Cotton Exchange, 270 U.S. 593, 610 [1926] ... "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."

Id. at 823. In more recent cases, appellate courts have held that joinder is proper where common activity constitutes a substantial portion of the proof. United States v. Roselli, 432 F.2d 879 (9th Cir.1970), *cert. denied*, 401 U.S. 924 (1971).

Here, it appears on the face of the Indictment (#1) that the defendants have been charged together based on allegedly unlawful common activity.

### 2. Rule 14 Severance

The second step requires weighing alleged prejudice against judicial economy. Even where Rule 8 joinder is proper, allegations that joinder of defendants will prejudice the defendant by preventing a fair trial must be weighed against the court's interest in judicial economy. Rule 14 provides, as follows:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed.R.Crim.P. 14(a). The issue under Rule 14 is whether prejudice due to joinder would likely infringe a defendant's Sixth Amendment right to a fair trial. United States v. Boffa, 513 F.Supp. 444 (D.Del.1980).

In order to warrant severance, the moving defendant must satisfy the burden of showing prejudice which will interfere with such defendant's constitutional right to a fair trial. 8 Moore's Federal Practice, at ¶ 14.02[1], 14–5, 6, *citing* United States v. LaRouche, 896 F.2d 815 (4th Cir.1990). Conclusory allegations that a defendant will be unduly prejudiced will not suffice; the burden is on the defendant to show that joinder will *probably* result in undue prejudice meriting severance. United States v. De La Cruz Bellinger, 422 F.2d 723 (9th Cir.), *cert. denied*, 398 U.S. 942 (1970); *cf.* United States v. McClure, 734 F.2d 484 (10th Cir.1984). If defendant makes such an initial showing, the Court must balance such concerns with the court's interest in "speed, efficiency and convenience in the functioning of the federal judicial machinery...." Cataneo v. United States, *supra*. In determining the extent of any alleged prejudice, the court considers whether, under all the circumstances, it is within the capacity of the jury to follow the court's instructions to keep separate the relevant evidence. United States v. Diaz–Munoz, 632 F.2d 1330 (5th Cir.1980).

### B. Discussion

#### 1. Spillover

Defendant Wright first contends that her trial should be severed from the trial of her codefendants because evidence presented against her husband (and, perhaps, her mother-in-law Defendant Tanya Fuentes) will unfairly prejudice her and result in the jury's inability to make an individualized determination as to whether she is guilty or not guilty. Here, the Court's task is to

determine the extent of possible spillover evidence, its potential for prejudice and its impact on a fair trial, and whether such risk outweighs the competing public interest in having a joint trial.

While Defendant Wright presents a forecast of her alleged role in the offense that would exclude most criminal conduct, the Court is concerned with the presentation of *prejudicial* spillover evidence. Thus, the Court will focus on the forecast of evidence presented by the government. The Court presumes at this point -- as will the jury -- that Defendant Wright is innocent of the offenses charged in the indictment. Turning to the government's forecast of evidence, the government proffers that its evidence will show that between April 28 and May 8, 2016, the defendants conspired to transport three minor victims across state lines from Charlotte, North Carolina to Myrtle Beach, South Carolina to engage in prostitution in order to raise bail money for Defendant Zerrell Fuentes. They proffer that all defendants, including Defendant Wright, developed a scheme to bring the minor victims to Myrtle Beach so that the minors could perform commercial sex acts. The government forecasts that it will present the same witnesses and substantially the same evidence against all three defendants and that such common evidence will demonstrate Defendant Wright's active role both in formulating the plan with her husband and in executing it with Defendant Tanya Fuentes. The government states that it will likely introduce recorded jail calls between Defendants Wright and Zerrell Fuentes discussing the plan to recruit and bring the minor victims with Defendants Wright and Tanya Fuentes to Myrtle Beach, as well as progress calls between them during the trip and following Defendant Wright's return from Myrtle Beach.

The government also proffers that it anticipates introducing evidence demonstrating Defendant Wright's significant role in executing the scheme. It contends that its evidence will show that Defendant Wright drove Defendant Tanya Fuentes and the minor victims to Myrtle

Beach in her car on May 6, 2016. Such evidence is also predicted to show that Defendant Wright facilitated the placement of prostitution advertisements containing pictures of at least two of the minor victims on known prostitution websites, such as *Backpage.com*, and that Defendant Wright coordinated the commercial sex acts and negotiated rates with prospective "Johns" on behalf of the minor victims. Further, the proffer is predicted to show that Defendant Wright drove the minor victims to "dates" with the Johns while in Myrtle Beach and sought to hold the money earned by the minor victims for the commercial sex acts performed and following the group's return to Charlotte on or about May 8, 2016. The government's also states that its evidence will also likely include testimony from one or more of the minor victims. It is anticipated that they will testify as to their participation in the scheme, as well as the involvement of all three defendants, including Defendant Wright.

Here, the Court cannot find that Defendant Wright is exposed to "spillover evidence." The forecast presented by the government, if believed, would clearly show that Defendant Wright took a lead, hands on role in the alleged sex trafficking scheme. Defendant Wright's argument that the evidence is stronger against one or more of her alleged co-conspirators finds no purchase in the proffer. Indeed, it is hard to discern any potential for spillover as it appears that all three defendants were potentially swimming in the same pool.

Acknowledging the possibility that the government's evidence at trial might not be as strong as it is in the proffer, and knowing that it will be subject to vigorous cross-examination, the Court finds that any potential prejudice from spillover evidence can be cured with an appropriate limiting instruction.

> The fact the evidence against one defendant is stronger than the evidence against others does not in itself justify severance. If this were the case, motions to sever, which are rarely granted in conspiracy cases would have to be granted as a matter of course.

6

United States v. Brooks, 957 F.2d 1138, 1145 (4th Cir. 1992) (citations omitted).

The only spillover the Court can discern is evidence concerning Defendant Zerrell Fuentes underlying gun charge. While it appears likely that the government will be able to put on evidence concerning the gun charge as the motivating factor for the conspiracy, any prejudice from that spillover can be resolved by an appropriate limiting instruction.

Having balanced the competing interests, and having found that there is little to no potential for an unfair trial, the Court will deny the request for severance on the basis of spillover evidence.

### 2. Marital Privilege

Among the bundle of privileges enjoyed by spouses is a limited right to protect the confidentiality of certain, but not all, marital communications. *The New Wigmore: Evidentiary Privileges* § 1.3. The marital privilege is in fact two distinct privileges: the marital communications privilege; and the spousal adverse testimonial privilege. Here, defendant seeks to sever on the basis of the adverse spousal testimony privilege.

The adverse spousal testimony privilege allows a spouse to refuse to testify adversely against one's spouse regarding acts observed before or during the marriage. Trammel v. United States, 445 U.S. 40, 47 (1980). This privilege belongs solely to the spouse who is a witness, United States v. Freeman, 694 F. Supp. 190, 191 (E.D. Va. 1988), and can be unilaterally waived by the testifying spouse. Trammel, 445 U.S. at 53. Unlike the marital communications privilege, this privilege cannot be invoked by the non-testifying spouse. Id.

While the Fifth Amendment right against self-incrimination is a fundamental *right*, the ability to refuse to testify adversely to one's spouse is a common law *privilege*. United States v. Artates, 2012 WL 6597752 at *2 (D. Haw. Dec. 18, 2012). Here, Defendant Wright contends that a joint trial would improperly pit her *right* to give testimony in her own defense against her

*privilege* not to give testimony against her spouse. While that may certainly be a difficult choice, it is not one of constitutional dimension:

> the privilege not to testify against one's spouse is just that—a privilege. If a criminal defendant may be required to choose his right to testify over his fifth amendment right to avoid self-incrimination, *e.g., Raffel v. United States*, 271 U.S. 494, 499, 46 S.Ct. 566, 568, 70 L.Ed. 1054 (1926), surely a defendant may be required to make a choice between her right to testify and her option to assert a privilege that implicates no constitutional right.

Freeman, 694 F. Supp. at 191–92. When placed in the balance, the Court's interest in trying all charges against this defendant and her co-defendants in one trial outweighs any potential for prejudice. Here, defendant is free to exercise her right to testify or not exercise that right. The asserted privilege does not stand in the way of free exercise of that right.

A severance simply is not justified where the choice is between exercising a constitutional right and invoking a unilateral common law privilege. Id. If Defendant Wright wishes to exercise her right to testify on her own behalf and give testimony that would diminish her involvement by painting her husband as the mastermind, she has that right; likewise, if Defendant Zerrell Fuentes wishes to exercise his right to testify to the obverse, he also has that right. The Court simply finds no basis for severing a trial where no constitutional right is impinged by a joint trial. United States v. Dowdy, 738 F.Supp. 1283, 1286 (W.D.Mo.1990) (holding that "if a defendant may be forced to choose between his or her fifth amendment rights and the decision to take the stand, it is certainly fair to compel a defendant to choose between taking the stand and waiving the marital privilege, which is not constitutionally protected.").

\*\*\*

Review of defendant's motion reveals that she has not made a showing of actual, substantial prejudice based on joinder with her codefendants. United States v. Mitchell, 733 F.2d

327 (4th Cir. 1984); United States v. Carr, 805 F.Supp. 1266 (E.D.N.C. 1992). The Court will deny her motion, but will consider appropriate limiting instructions as the trial progresses.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Sever under Federal Rule of Criminal Procedure 14 (#64) is **DENIED**.

Signed: March 13, 2018

Max O. Cogburn Jr.
United States District Judge